Filed 5/26/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CITY OF SAN BUENAVENTURA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>UNITED WATER CONSERVATION DISTRICT,<br><br>    Defendant and Appellant. | 2d Civ. No. B312471<br>(Super. Ct. No. 19CV06168)<br>(Santa Barbara County) |

United Water Conservation District (District) manages the groundwater resources in central Ventura County.  City of San Buenaventura (City) pumps groundwater from the District's territory and sells it to residential and commercial customers.  The District collects a fee from the City and other groundwater users based on the volume of water they pump.

The District applies a fixed ratio of rates for non-agricultural users, such as the City, who pump groundwater for municipal and industrial (M&I) uses.  The District charges such

users three times more than agricultural (also known as "Ag") users in accordance with Water Code section 75594.[1]

This appeal arises out of the trial court's judgment declaring (1) the groundwater extraction charge adopted by the District for the 2019-2020 water year is invalid as to non-agricultural users and must be set aside and (2) section 75594 violates Article XIII C, section 1, subdivision (e) of the California Constitution and is therefore unconstitutional. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

The District was formed to manage, protect, conserve and enhance groundwater for those entitled to use it. (§ 74000 et seq.) The District covers 214,000 acres in central Ventura County and the Santa Clara River watershed and encompasses eight groundwater basins. It serves those who pump groundwater from the basins, including the City's water utility.

The District funds its work through property taxes, fees on its surface water sales, investment earnings and the groundwater extraction charges at issue here. The District has established two zones for the charges: Zone A covers the whole District; Zone B includes those who benefit directly from the Freeman Diversion Dam on the Santa Clara River. Wells in Zone B, some of which belong to the City, pay both Zone A and Zone B extraction charges.

In imposing its extraction charges, the District divides groundwater pumpers into two classes: Ag and M&I. Ag uses include the production of food and commercial crops, livestock

---

[1] All statutory references are to the Water Code unless otherwise stated.

support and aquaculture.  M&I uses include drinking water, residential and commercial uses and landscape irrigation.

According to the District's rate consultant, Ag uses accounted for approximately 75 to 80 percent of all groundwater pumping between 2005 and 2018.  District data shows a similar relationship of about 80 percent between Ag and M&I uses in the 1980s and 1990s.  By way of example, the City was the District's third highest fee payor in fiscal year 2017-2018 even though it accounted for less than five percent of the District's groundwater use.

Notwithstanding this disparity, the District has historically charged M&I customers three times what it charges Ag customers in accordance with section 75594, which provides, in pertinent part:  "[A]ny ground water charge in any year shall be established at a fixed and uniform rate for each acre-foot for water other than agricultural water which is not less than three times nor more than five times the fixed and uniform rate established for agricultural water."

The District adopted the rates at issue here based on a Cost of Service Analysis (COSA) by an accounting firm, HF&H Consultants, LLC, and an economics analysis by Stratecon, Inc. (Stratecon Report).  The District has relied upon these firms to support the 3:1 rate ratio since the City filed its initial challenge in 2011.

### B. Legal Background

"Through a series of initiatives — Proposition 13 in 1978, Proposition 218 in 1996, and Proposition 26 in 2010 — California voters have 'limit[ed] the authority of state and local governments to impose taxes without voter approval.' [Citations.]"  (*Humphreville v. City of Los Angeles* (2020) 58

Cal.App.5th 115, 122 (*Humphreville*).) These limitations "only apply if the local government is seeking to levy a 'tax.'" (*Ibid.*)

Since the enactment of Proposition 26, "'tax' has been broadly defined to encompass 'any levy, charge, or exaction of any kind imposed by a local government.' [Citations.]" (*Humphreville, supra*, 58 Cal.App.5th at p. 122.) This definition has several exceptions, including "[a] charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service or product." (Cal. Const., art. XIII C, § 1, subd. (e)(2).)

"In assessing whether the charge for a specific service or product exceeds the costs of providing it, the costs allocated to each payor must also 'bear a fair or reasonable relationship to the payor's burdens on, or the benefits received from, the governmental activity.' [Citations.] The local government bears the burden of proving that its proposed tax fits within this exception. (Cal. Const., art. XIII C, § 1, subd. (e)." (*Humphreville, supra*, 58 Cal.App.5th at p. 123.)

*C. United Water*

In an earlier appeal involving the City's challenge to the District's pumping charges for the 2011-2012 and 2012-2013 water years, we determined the charges were not unauthorized taxes under article XIII C. On review, the California Supreme Court agreed "that article XIII C of the California Constitution, as amended by Proposition 26 . . . supplies the proper framework for evaluating the constitutionality of the groundwater pumping charges." (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1198 (*United Water*).)

The Court remanded the matter to us "to consider whether the record sufficiently establishes that the District's rates for the 2011-2012 and the 2012-2013 water years bore a reasonable relationship to the burdens on or the benefits of its conservation activities, as article XIII C requires." (*Id.* at p. 1214.) Absent a reasonable relationship, the rates are unapproved taxes imposed in violation of the Constitution. (*Ibid.*)

The Court did not decide "whether the three-to-one ratio in . . . section 75594 is facially unconstitutional under article XIII C," but invited the parties "to argue the point on remand." (*United Water*, *supra*, 3 Cal.5th at p. 1214, fn. 9.) In a concurring opinion, Justice Liu indicated he would hold the statute unconstitutional. (*Id.* at p. 1215 (conc. opn. of Liu, J.).)

On remand, we determined the administrative records for the 2011-2012 and 2012-2013 water years were insufficient to establish whether the District's rates for those years bore a reasonable relationship to the burdens on or the benefits of its conservation activities. (*City of San Buenaventura v. United Water Conservation Dist.* (Mar. 4, 2019, B251810) [nonpub. opn.].) Consistent with the Supreme Court's remittitur, we afforded the parties an opportunity to supplement the administrative records with evidence bearing on this question. (*Ibid.*) We instructed the trial court to remand the matter to the District to allow for augmentation of the 2011-2012 and 2012-2013 administrative records in Superior Court Case Nos. VENCI 00401714 and VENCI 1414739. (*Ibid.*)

In lieu of augmenting these records, the trial court and the parties decided to litigate the City's more recent challenge to the rates for the 2019-2020 water year (Superior Court Case No.

5

19CV06168).[2]  The court found that addressing the City's challenges for the 2011-2012 and 2012-2013 water years along with those for subsequent years "would be an unnecessarily complex effort" given "the multiple and potentially different administrative records."

The trial court explained it would "determine the substantive merits of City's challenge to the District's rates for FY 2019-2020 in this phase 1.  In phase 2, the Court will determine the remedy based upon its determinations in phase 1.  Further proceedings – and perhaps stipulations – are expected following the Court's determination on the administrative record for FY 2019-2020 with respect to City's challenge to District's charges for other years based upon the similarities or differences from the arguments and administrative record of those other years from this disposition on this administrative record."[3]

### D. Trial Court's Ruling

The City filed its complaint for determination of invalidity and declaratory relief and petition for writ of mandate in 2019.  The City alleged the groundwater extraction rates charged by the District for the water year 2019-2020 were not allocated to the

---

[2] The City has filed annual challenges to the District's rates since 2011.

[3] We express no opinion as to whether this procedure is consistent with the Supreme Court's remittitur in *United Water* and our subsequent remand order with respect to the 2011-2012 and 2012-2013 water years.  (See, e.g., *Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982 ["When an appellate court's reversal is accompanied by directions requiring specific proceedings on remand, those directions are binding on the trial court and *must* be followed"]; *Martinez v. Rite Aid Corp.* (2021) 63 Cal.App.5th 958, 969 [same].)

City and other M&I users in a manner that bears a reasonable relationship to the City's burdens on or benefits from the District's activities. The City further alleged that section 75594, which requires a minimum 3:1 groundwater rate extraction ratio between M&I and Ag users, is facially unconstitutional.

In a comprehensive statement of decision, the trial court rejected the District's argument that the appropriate standard of review is the flexible rational or reasonable basis test. It determined the City's challenge requires independent review of the administrative record to assess whether the District has met its burden to establish that the groundwater charges are not taxes within the meaning of Proposition 26.

Applying this standard, the trial court determined the evidence does not show a "fair or reasonable relationship" between the 3:1 ratio and M&I and Ag customers' relative "burdens on, or benefits received from" the District's services. It also concluded that section 75594's mandate that the District charge M&I pumpers at least three times more than Ag pumpers regardless of the pumpers' proportionate impacts on the groundwater resources conflicts with Proposition 26's cost-of-service requirement and is therefore unconstitutional.

The parties stipulated to enter judgment in the City's favor to facilitate this appeal of the trial court's phase 1 ruling. The judgment declares section 75594 invalid and directs "the District to: (a) vacate and rescind its groundwater extraction charge adopted on or about June 12, 2019 as that charge pertains to non-agricultural groundwater users; (b) set any future groundwater extraction charge in compliance with California Constitution, article XIII C, section 1, subdivision (e), without regard to . . . section 75594; and (c) pay the City a partial refund of the

invalidated groundwater extraction charges it paid in fiscal year 2019-2020 in the amount of $1,002,083, inclusive of prejudgment interest, as determined by the parties' Settlement Agreement." The trial court stayed the terms' enforcement pending "a final, non-appealable judgment in this action."

## II. DISCUSSION

### A. Standard of Review

The threshold issue on appeal concerns the applicable standard of review. Citing two Proposition 13 cases, *Brydon v. East Bay Municipal Utility Dist.* (1994) 24 Cal.App.4th 178 (*Brydon*) and *California Association of Prof. Scientists v. Department of Fish & Game* (2000) 79 Cal.App.4th 935 (*Professional Scientists*), the District argues the deferential "rational basis" or "reasonable basis" test applies in Proposition 26 cases. The District claims the trial court "was compelled under rational basis review to accept the District's approximations and generalizations in setting rates, even when 'not made with mathematical nicety or because in practice it results in some inequality.' [Citation.]"

The trial court rejected this argument, finding that the independent review standard employed in Proposition 218 cases, as stated in *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431 (*Silicon Valley*), also applies in Proposition 26 cases. The court reasoned: "The Supreme Court's brief discussion of *Brydon* and *Professional Scientists* in *United Water* cannot be read to supplant the *Silicon Valley* standard of independent review. The *United Water* discussion, together with its remand allowing for further factfinding, demonstrates only that there is flexibility in determining what is 'fair or reasonable.' The constitutional

8

requirement of a 'fair or reasonable relationship' is not resolved by application of a rigid judicial standard nor by application of a deferential standard of substantial evidence. Had the Supreme Court intended a wholesale change in the *Silicon Valley* standard – a question that warranted pages of analysis in *Silicon Valley* – the Supreme Court would have stated that change clearly, rather than leave such a significant change in the law to an implication from a short comment."

### 1. *Proposition 26 Claims are Subject to Independent Review*

We agree with the trial court's analysis. As *United Water* observed, Propositions 13, 218 and 26 were enacted as a "series of voter initiatives" to restrict "local government taxes, fees, charges, and other exactions." (*United Water*, *supra*, 3 Cal.5th at pp. 1199-1200.) Proposition 218 added article XIII C, which requires voter approval of all taxes imposed by local governments. (*United Water*, at p. 1200.) It also "tighten[ed] the two-thirds voter approval requirement for 'special' taxes and assessments imposed by Proposition 13." (*Brooktrails Township Community Services Dist. v. Board of Supervisors of Mendocino County* (2013) 218 Cal.App.4th 195, 197 (*Brooktrails*).) Proposition 218 is "'liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent.' [Citation.]" (*Silicon Valley*, *supra*, 44 Cal.4th at p. 448.)

*Silicon Valley* determined that "[b]ecause Proposition 218's underlying purpose was to limit government's power to exact revenue and to curtail the deference that had been traditionally accorded legislative enactments on fees, assessments and charges, a more rigorous standard of review [i.e., independent review] is warranted." (*Silicon Valley*, *supra*, 44 Cal.4th at

9

p. 448.)  The Court explained:  "Before Proposition 218 became law, special assessment laws were generally statutory, and the constitutional separation of powers doctrine served as a foundation for a more deferential standard of review by the courts.  But after Proposition 218 passed, an assessment's validity, including the substantive requirements, is now a constitutional question."  (*Ibid*, italics omitted.)

The same is true here.  The validity of the District's charges is also a constitutional question.  Proposition 26 amended article XIII C with the goal of "further tightening Proposition 218's restrictions on revenue-generating measures that are not approved by voters" and "halt[ing] evasions of Proposition 218."[4] (*Brooktrails*, *supra*, 218 Cal.App.4th at pp. 198, 203, fn. omitted.)

---

[4] The findings and declarations of purpose for Proposition 26 state:  "Since the enactment of Proposition 218 in 1996, the Constitution of the State of California has required that increases in local taxes be approved by the voters.  [¶] . . .  Despite these limitations, California taxes have continued to escalate.  Rates for . . . a myriad of state and local business taxes are at all-time highs.  Californians are taxed at one of the highest levels of any state in the nation.  [¶] . . . [¶] . . .  This escalation in taxation does not account for the recent phenomenon whereby . . . local governments have disguised new taxes as 'fees' in order to extract even more revenue from California taxpayers without having to abide by these constitutional voting requirements. . . . [¶] . . .  In order to ensure the effectiveness of these constitutional limitations, this measure . . . defines a 'tax' for state and local purposes so that neither the Legislature nor local governments can circumvent these restrictions on increasing taxes by simply defining new or expanded taxes as 'fees.'"  (Voter Information Guide, Gen. Elec. (Nov. 2, 2010) text of Prop. 26, § 1, subds. (b), (c), (e), (f), p. 114.)

Since Propositions 218 and 26 have the same underlying purpose, i.e., to "limit government's power to exact revenue and . . . curtail the deference that had been traditionally accorded legislative enactments on fees, assessments and charges" (*Silicon Valley*, *supra*, 44 Cal.4th at p. 448), we join the courts that have applied independent review of Proposition 26 claims. (E.g., *Griffith v. City of Santa Cruz* (2012) 207 Cal.App.4th 982, 989-990 [Proposition 218 and 26 violations "are subject to a de novo or independent standard of review"]; *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2017) 12 Cal.App.5th 1124, 1152 ["'We review de novo the question whether the challenged rates comply with [Proposition 26] constitutional requirements'"]; *Newhall County Water Dist. v. Castaic Lake Water Agency* (2016) 243 Cal.App.4th 1430, 1440 (*Newhall*) [same].)

The District cites no persuasive authority suggesting an alternative standard. The term "rational basis" does not appear in *United Water*, as the District suggests, and the only mention of "reasonable basis" appears in a brief reference to *Professional Scientists'* decision "upholding higher fees for filing certain environmental review documents as having 'sufficient reasonable basis.'" (*United Water*, *supra*, 3 Cal.5th at p. 1214.) Not only did *Professional Scientists* involve only Proposition 13, but it also applied independent review, recognizing "the fundamental principle that 'whether impositions are "taxes" or "fees" is a question of law for the appellate courts to decide on independent review of the facts.' [Citation.]" (*Professional Scientists*, *supra*, 79 Cal.App.4th at p. 944.)

The District's reliance on *Brydon* is similarly misplaced. While *Brydon* "might still be read as evidence that tiered pricing

11

not otherwise connected to cost of service would survive a rational basis or equal protection challenge – [it] simply has no application to post-Proposition 218 cases." (*Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493, 1512.) "*Brydon* . . . was part of the general case law which the enactors of Proposition 218 wanted replaced with stricter controls on local government discretion." (*Id.* at p. 1513.)

### 2. *Findings of Fact are Reviewed for Substantial Evidence*

Even when we exercise our independent judgment, we presume the appealed judgment is correct and do not decide disputed issues of fact. (*Moore v. City of Lemon Grove* (2015) 237 Cal.App.4th 363, 368-369.) *Silicon Valley*'s independent review standard "does not change the substantial evidence standard of review and does not allow us to independently resolve issues of disputed fact already decided by the trial court. If an appellant challenges a finding of fact, we must employ the substantial evidence standard of review. As such, we are not concerned about a conflict in the evidence. . . . 'Rather, it is simply whether there is substantial evidence in favor of the respondent. If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing.' [Citation.]" (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 917 (*Morgan*); *Newhall, supra,* 243 Cal.App.4th at p. 1440.)

## B. *The District's Rates for the 2019-2020 Water Year Do Not Comply with Proposition 26*

The principal issue before us is whether the District's rates for the 2019-2020 water year "bore a reasonable relationship to the burdens on or the benefits of [the District's] conservation activities, as article XIII C requires." (*United Water, supra*, 3 Cal.5th at p. 1214.) Based on our independent review of the law, facts and administrative record, we agree with the trial court that the 3:1 ratio between M&I and Ag rates does not pass constitutional muster.

The trial court rejected the District's assertions, based on the COSA and Stratecon Report, that the 3:1 ratio between the M&I and Ag groundwater charges is constitutional. The court found that (1) "M&I users do not enjoy a more reliable groundwater supply than Ag users," (2) "Ag does not have a preferential right to pump the safe yields of the basins the District augments" and (3) the Stratecon Report "credits regarding recharge on Ag and natural lands do not reflect an accurate 'cost-based valuation for replenishment.'"

The District does not challenge these factual findings, arguing instead that the record supports contrary findings. Even if that is true, we are bound by the trial court's findings to the extent they are supported by substantial evidence. (*Morgan, supra*, 223 Cal.App.4th at p. 917.) We may not reweigh a judgment "supported by substantial evidence even if substantial evidence to the contrary also exists." (*DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 382.)

For example, the District focuses on the undisputed evidence that Ag land has greater natural recharge of water than urbanized land. This evidence was offset, however, by

13

substantial evidence that Ag's relatively high recharge rate per acre-foot is swamped by its total pumpage, which accounts for 77 percent of net extractions.

The parties produced considerable expert evidence to support their positions. The trial court did "not find persuasive the District's arguments or evidence that the COSA allocation of costs for reliability or regulatory compliance costs are reasonably related to the benefits for which Ag and M&I are charged." It found the "City's expert opinions more persuasive as to the lack of reasonable relationship of costs to benefits set forth in the COSA." It also found the City's expert's criticism of the Stratecon Report "more credible."

It is not our role to reweigh the evidence or reassess the strength of the experts' opinions. (See *People v. Poe* (1999) 74 Cal.App.4th 826, 831.) Construing the evidence in the light most favorable to the judgment, we conclude, based on the evidence, that the District's rates for the 2019-2020 water year did not bear "a reasonable relationship to the burdens on or the benefits of [the District's] conservation activities, as article XIII C requires." (*United Water, supra*, 3 Cal.5th at p. 1214.)

We reject the District's contention that Proposition 26 conflicts with article X, section 2 of the California Constitution. As *Newhall* recognized, "article X's conservation [of water] mandate cannot be read to eliminate Proposition 26's proportionality requirement." (*Newhall, supra*, 243 Cal.App.4th at p. 1449; see *City of Palmdale v. Palmdale Water Dist.* (2011) 198 Cal.App.4th 926, 936-937 [Article X "is not at odds with article XIII D [Proposition 218] so long as, for example, conservation is attained in a manner that 'shall not exceed the proportional cost of the service attributable to the parcel'"].)

14

### C. Section 75594 is Facially Unconstitutional

Justice Liu's concurring opinion in *United Water* succinctly explains why section 75594 is constitutionally invalid: "One of the issues on which [the Supreme Court] granted review was whether . . . section 75594's requirement for at least a three-to-one ratio of fees on nonagricultural use of groundwater to such fees on agricultural use survives the adoption of . . . articles XIII C and XIII D. The answer, which is apparent from today's opinion, is that the requirement does not survive. There may be circumstances in which the three-to-one ratio is justified, but justification will not have anything to do with . . . section 75594. Instead, the justification will be that the fees imposed on ratepayers bear 'a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.' [Citations.]" (*United Water, supra*, 3 Cal.5th at p. 1215 (conc. opn. of Liu, J.).)

Adopting this reasoning, we uphold the trial court's ruling striking down this statute.

### III. DISPOSITION

The judgment on appeal is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

We concur:

GILBERT, P.J.          YEGAN, J.

15

Thomas P. Anderle, Judge
Superior Court County of Santa Barbara
_____

Atkinson, Andelson, Loya, Ruud & Romo, David D. Boyer, Brian M. Wheeler, Dan J. Bulfer and Lana Milojevic, for Defendant and Appellant.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, David J. Ruderman, and John R. di Cristina; City of San Buenaventura, Gregory G. Diaz and Miles P. Hogan, for Plaintiff and Respondent.